**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSE VIZCARRONDO-CASANOVA,<br>*Plaintiff*,<br>v.<br>RICHARD DIMONTE,<br>*Defendant*. | Civil Action No. 25-17135 (ZNQ) (JTQ)<br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court on Plaintiff Jose Vizcarrondo-Casanova's Motion to Amend. (ECF No. 6.) The Court previously dismissed Plaintiff's complaint without prejudice for failure to state a claim and granted him thirty days in which to file an amended complaint. (ECF Nos. 4, 5.) Plaintiff's motion was submitted within that period, and the Court construes it, together with its attachments (ECF Nos. 6-1 through 6-3), as Plaintiff's Amended Complaint.[1] Because Plaintiff remains a prisoner suing an individual he alleges to be an employee of a governmental entity, the Court is again required by 28 U.S.C. § 1915A to screen the amended pleading and to dismiss any claim that is frivolous, malicious, fails to state a claim for relief, or seeks relief from an immune defendant. For the reasons set forth below, the Court finds that Plaintiff's claim is not time barred, but that the Amended Complaint nevertheless fails to state a

[1] Local Civil Rule 15.1 ordinarily requires a party moving to amend to attach the proposed amended pleading. Because the Court has already granted Plaintiff leave to amend (ECF No. 5), because Plaintiff is proceeding *pro se*, and because Plaintiff's submission and exhibits set out his factual allegations and his argument against dismissal in full, the Court does not deny the motion on that basis. The Court notes that an Amended Complaint ordinarily supersedes the original pleading. *See West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). Because Plaintiff's submission does not purport to restate every allegation of his original complaint, and in light of his *pro se* status, the Court considers the allegations of both (ECF Nos. 1, 6) together, as well as the exhibits attached to the motion. *See* Fed. R. Civ. P. 10(c).

claim for relief. Plaintiff's Eighth Amendment claim against Dr. Dimonte is therefore dismissed with prejudice.

## I. BACKGROUND[2]

Plaintiff is a federal prisoner confined at FCI Fairton. (ECF No. 1 at 5.) On February 24, 2023, he injured his right elbow while carrying a dryer with another inmate as part of a work assignment. (ECF No. 6-2 at 2.) The Bureau of Prisons ("BOP") clinical encounter record from that day classifies the injury as work related. (*Id.*) An advanced practice nurse examined Plaintiff and ordered an X-ray. (*Id.* at 3.) She suspected a soft tissue injury, provided Plaintiff with a sleeve and ibuprofen, counseled him to apply ice, and scheduled him for a follow-up. (*Id.* at 3-4, 7.) Her note was submitted for cosignature to Defendant Dr. Richard Dimonte. (*Id.* at 2.) Plaintiff alleges that on March 7, 2023, Dr. Dimonte saw him and told him that "everything was ok." (ECF No. 6 at 1; ECF No. 6-3 at 3.)[3]

On June 12, 2023, a physician assistant, Kyle Knowles, evaluated Plaintiff for four months of right arm pain, suspected a distal biceps tendon rupture, referred Plaintiff to an orthopedist, and restricted him from lifting more than fifteen pounds. (ECF No. 6-2 at 5-6, 21.) On August 21, 2023, the orthopedist, Dr. Adam Zucconi, documented a rupture of the distal biceps tendon and recommended an MRI. (*Id.* at 8-9, 21.) The MRI, performed in December 2023, revealed a complete, chronic tear. (*Id.* at 15, 22.) On February 14, 2024, Dr. Zucconi reported that the MRI

[2] The Court's prior Opinion recounted the allegations of Plaintiff's complaint, and the Court assumes familiarity with them. (ECF No. 4 at 1-2.) The Court summarizes here the facts relevant to the present motion, drawing from Plaintiff's motion and the exhibits he has attached to it.

[3] Plaintiff alleges that Dr. Dimonte saw him on March 7, 2023. (ECF No. 6 at 1.) The Warden's response to Plaintiff's administrative remedy request describes a chronic care clinic evaluation on March 6, 2023, during which Plaintiff reported that his right elbow pain had resolved. (ECF No. 6-2 at 21.) The Warden's response states that Plaintiff was evaluated on that date by the Clinical Director (*id.* at 37), a title that appears after Dr. Dimonte's name on the request to cosign the February 24, 2023 note (*id.* at 3), but Plaintiff does not allege what occurred at the appointment beyond Dr. Dimonte's statement. The one-day discrepancy is immaterial, and the Court accepts Plaintiff's date for purposes of screening. The Court does not rely on the Warden's recitation for the truth of the matter asserted.

showed a retracted nine-centimeter distal biceps tear; that, because of the passage of time since the injury, surgical repair would be difficult and the odds of full range of motion and strength were "highly unlikely"; and that, in his opinion, the injury was "now best treated nonsurgically." (*Id*. at 16.) Dr. Zucconi recorded that Plaintiff "agree[d] with today's assessment and plan," estimated a functional loss of fifteen to twenty percent, and noted that Plaintiff "was entitled to a 2nd opinion if he so wants," which "can be arranged with the prison system." (*Id*.)

Plaintiff alleges that he sent a request to medical staff in May 2024 seeking a second opinion, followed by an electronic request on June 3, 2024, and that he received no response to either. (ECF No. 6 at 1-2; ECF No. 6-1 at 2.) He began the BOP's Administrative Remedy Program on June 24, 2024, with a BP-8, followed by a BP-9 (received August 20, 2024) and a BP-10 regional appeal on September 11, 2024. (ECF No. 6 at 2; ECF No. 6-2 at 18-19.) Two of his regional filings were rejected on technical grounds, in September and October 2024, and the Regional Director responded on December 20, 2024. (ECF No. 6-2 at 23-27, 34.) Plaintiff then appealed to the Central Office, which denied his appeal on March 17, 2025. (*Id*. at 35-38.) The Central Office found that the record reflected that Plaintiff had received medical care "in accordance with evidence based standard of care," and noted that the Administrative Remedy Program does not provide monetary relief. (*Id*.) Plaintiff also submitted an administrative tort claim, which the BOP's Northeast Regional Counsel denied on May 20, 2025, reasoning that Plaintiff alleged an injury sustained during a work assignment, for which the proper remedy is the Inmate Accident Compensation System established by 18 U.S.C. § 4126 and 28 C.F.R. Part 301. (ECF No. 6-3 at 4.)

Plaintiff's original complaint was dated October 2, 2025, and named only Dr. Dimonte as a defendant. (*See* ECF No. 4 at 5.) On February 18, 2026, the Court dismissed that complaint

without prejudice, concluding that Plaintiff had alleged no more than negligence by Dr. Dimonte at a single appointment. The Court further noted that the claim appeared to be time barred and that the existence of the BOP's administrative remedy system likely foreclosed a *Bivens* remedy in any event. (ECF No. 4 at 4-5 & n.1.) Plaintiff's motion, signed on March 18, 2026, and received by the Court on March 26, 2026, does not add any new defendant. It restates the chronology set out above; argues that the limitations period was tolled while he exhausted his administrative remedies; and requests monetary relief for pain and suffering and for the lasting limitation of function in his right arm. (ECF No. 6 at 1-3.) The motion does not allege any further interaction between Plaintiff and Dr. Dimonte and does not address the Court's observations regarding the availability of a *Bivens* remedy.

## II. <u>LEGAL STANDARD</u>

As the Court explained in its prior Opinion, a court screening a prisoner's complaint under 28 U.S.C. § 1915A applies a standard "identical to the legal standard employed in ruling on [Rule] 12(b)(6) motions." *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008). The Court accepts the factual allegations of the pleading as true and draws all reasonable inferences in the plaintiff's favor, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but the pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" and "naked assertion[s] devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted). Although *pro se* pleadings are construed liberally, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

Where a plaintiff has been granted leave to amend, a court should permit amendment unless doing so would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). An amendment is futile if the amended pleading would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). A prisoner's submission is deemed filed on the date he delivers it to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

## III. <u>DISCUSSION</u>

### A. The Motion Is Timely and Is Construed as an Amended Complaint

The Court's February 18, 2026 Order afforded Plaintiff thirty days to file an amended complaint, which ran through March 20, 2026. (ECF No. 5.) Plaintiff signed his motion on March 18, 2026. (ECF No. 6 at 3.) Under the prison mailbox rule, the submission is therefore timely, notwithstanding that the Clerk received it on March 26, 2026. The Court construes it as Plaintiff's Amended Complaint and screens it accordingly.

### B. Timeliness

The Court's prior Opinion observed that Plaintiff's claim appeared to be time barred absent a basis for tolling, and that no such basis was apparent from the face of the complaint. (ECF No. 4 at 5.) Plaintiff's motion supplies one. (ECF No. 6 at 2-3.)

Federal civil rights claims, including claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), are subject to New Jersey's two-year statute of limitations for personal injury actions. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010); *Fisher v. Hollingsworth*, 115 F.4th 197, 209-10 (3d Cir. 2024). A claim accrues when the plaintiff knew or should have known of the injury on which it is based. *Kach v. Hose*, 589 F.3d

626, 634 (3d Cir. 2009). The Prison Litigation Reform Act, however, forbids a prisoner from bringing suit with respect to prison conditions until he has exhausted the administrative remedies available to him. 42 U.S.C. § 1997e(a). The Third Circuit has held that, in light of that requirement, the statute of limitations on a prisoner's claim is tolled while the prisoner pursues his administrative remedies. *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015). The Third Circuit has since applied *Pearson* in a non-precedential decision to claims governed by New Jersey's limitations period. *Alexis v. Connors*, 23-2502, 2024 WL 3534480 (3d Cir. July 25, 2024) (not precedential). The prior Opinion did not address tolling because nothing in the original complaint disclosed that Plaintiff had pursued the BOP's Administrative Remedy Program.

Plaintiff's exhibits establish that he did exhaust all available administrative remedies. He initiated the process on June 24, 2024, and it concluded when the Central Office denied his appeal on March 17, 2025, a span of 266 days. (ECF No. 6 at 2; ECF No. 6-2 at 35-38.) Measuring from June 12, 2023, the date on which Plaintiff learned that his injury had been misdiagnosed, the limitations period would have expired on June 12, 2025, in the absence of tolling. With 266 days of tolling, it did not expire until March 5, 2026. Plaintiff's complaint, dated October 2, 2025, was filed well within that time.[4]

[4]The Court's prior Opinion measured accrual from June 2023, when Plaintiff was told that medical staff suspected a distal biceps tendon rupture. (ECF No. 4 at 5.) The Court adopts that date for present purposes. The result would be the same if accrual were measured from the date of the March 7, 2023 appointment itself: the limitations period would then have expired, with tolling, on November 28, 2025, and Plaintiff's complaint, dated October 2, 2025, would still be timely. Plaintiff's complaint would also be timely under less generous measures of the tolling period. Measured from June 12, 2023, the limitations period would still not have expired before October 2, 2025 if tolling began only when Plaintiff's formal BP-9 request was received on August 20, 2024 (ECF No. 6-2 at 18), rather than at the informal BP-8 stage (expiring January 7, 2026); if the forty-eight days between the Regional Director's December 20, 2024 response (ECF No. 6-2 at 34) and Plaintiff's February 6, 2025 appeal to the Central Office were excluded (expiring January 16, 2026); or even if both reductions were applied together (expiring November 20, 2025). The Court need not decide among these measures. Nor does the Court decide whether Plaintiff's pursuit of an administrative tort claim tolled the limitations period on his *Bivens* claim, as that question is unnecessary to the result.

The Court therefore withdraws the concern expressed in its prior Opinion and does not dismiss Plaintiff's claim as time barred. Timeliness does not, however, save a claim that fails on its own terms, and Plaintiff's does, for the reasons that follow.

### C. No Bivens Remedy Is Available

In its prior Opinion, the Court observed that, because Plaintiff alleges that Dr. Dimonte is a federal actor, his Eighth Amendment claim arises, if at all, under *Bivens* and *Carlson v. Green*, 446 U.S. 14 (1980), and that the Third Circuit's decision in *Muniz v. United States*, 149 F.4th 256 (3d Cir. 2025), likely foreclosed such a claim. (ECF No. 4 at 4 n.1.) The Court declined to decide the question because Plaintiff had not been given an opportunity to address it. (*Id.*) Plaintiff has now had that opportunity. His motion does not respond to the point, and his own submissions confirm the premise on which *Muniz* rests.

*Bivens* recognized an implied damages remedy against federal officers for violations of the Fourth Amendment, and the Supreme Court has extended it only twice, including in *Carlson*, which concerned a prisoner's Eighth Amendment claim for failure to provide adequate medical care. In the decades since, the Supreme Court has made clear that expanding the *Bivens* remedy to any new context is "a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (internal quotation marks omitted). A court asks first whether the case presents a new context, one meaningfully different from the Supreme Court's prior *Bivens* cases, and, if so, whether any "special factor" counsels hesitation, including the existence of an alternative remedial structure. *Id*. at 139-40, 147; *Egbert v. Boule*, 596 U.S. 482, 492-93 (2022). If there is a rational reason to think that Congress or the Executive is better suited to decide whether a damages remedy should exist, a court may not create one. *Egbert*, 596 U.S. at 496. And "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of

deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id*. at 498.

In *Muniz*, the Third Circuit applied these principles to an Eighth Amendment claim by a federal prisoner challenging the adequacy of his medical care. It held that the BOP's Administrative Remedy Program, which did not exist when *Carlson* was decided, makes such a claim meaningfully different from the one recognized in *Carlson* and presents a new context in which, under *Abbasi* and *Egbert*, a *Bivens* remedy is unavailable. 149 F.4th at 262-65. That decision is binding on this Court. *See also Kalu v. Spaulding*, 113 F.4th 311 (3d Cir. 2024).

Plaintiff's claim cannot be distinguished from the claim in *Muniz*. He alleges that a federal prison physician provided constitutionally inadequate medical care to a federal prisoner at FCI Fairton. And, as the Court noted in its prior Opinion, Plaintiff admits that he had access to the Administrative Remedy Program. His exhibits show that he used it, through each of its four levels, and that the Central Office reviewed his complaint about his medical care on the merits. (ECF No. 6-2 at 18-38.) That the program does not afford monetary relief, and that Plaintiff is dissatisfied with the outcome, does not alter the analysis. The inquiry under *Egbert* is not whether the alternative remedy is as effective as damages, but whether the political branches have established a remedial process, and in *Muniz* the Third Circuit concluded that they have. Plaintiff's emphasis on the lengthy process of exhausting that remedy (ECF No. 6 at 2-3) is thus a reason his claim is timely, but not a reason it can proceed. Plaintiff's *Bivens* claim against Dr. Dimonte therefore fails as a matter of law.[5]

[5]Even apart from *Muniz*, if Dr. Dimonte were an officer or employee of the Public Health Service, any damages claim arising from his medical services would be remediable only under the Federal Tort Claims Act. *See* 42 U.S.C. § 233(a); *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). Plaintiff's submissions do not identify Dr. Dimonte's employer, and the Court does not rest its decision on this alternative ground.

**D. The Amended Complaint Does Not Allege Deliberate Indifference**

Even if a *Bivens* remedy were available, Plaintiff's Amended Complaint would fail for the independent reason that it does not cure the deficiency identified in the Court's prior Opinion. To state a claim for inadequate medical care under the Eighth Amendment, a prisoner must plead facts indicating that the defendant was deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003). Deliberate indifference is a "subjective standard of liability consistent with recklessness," which is satisfied only where the defendant "knows of and disregards an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (internal quotation marks omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). It requires more than negligence, *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008), and "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. A prisoner who has received some treatment generally cannot establish deliberate indifference merely by disagreeing with the treatment he received. *Hairston v. Dir. Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990). In addition, because *Bivens* liability is personal, a plaintiff must plead that each defendant, "through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Plaintiff's motion alleges the same single interaction with Dr. Dimonte on which his original complaint relied: that on March 7, 2023, Dr. Dimonte told him that "everything was ok." (ECF No. 6 at 1.) The motion alleges nothing more about what Dr. Dimonte examined, knew, or decided, and nothing suggesting that Dr. Dimonte was aware that Plaintiff had a torn biceps tendon, or a substantial risk of one, and disregarded it. To the contrary, Plaintiff's own exhibits reflect that his February 24, 2023 injury was evaluated the day it occurred, that X-rays were taken and

reflected no fracture or dislocation, and that Plaintiff was treated for what the examining provider suspected to be a soft tissue injury. (ECF No. 6-2 at 34-35.) Plaintiff also acknowledges that the tendon rupture was first suspected on June 12, 2023, by a different provider, and that the diagnosis was thereafter confirmed by an orthopedist, an MRI, and a follow-up orthopedic consultation. (ECF No. 6 at 1.) Those facts, taken as true, describe a diagnosis that proved incomplete. They do not describe a provider who knew of and consciously disregarded a serious risk to Plaintiff's health. At most, Plaintiff alleges that Dr. Dimonte failed to diagnose his injury at a single appointment, which, as the Court previously held, sounds in negligence and does not support an Eighth Amendment claim. (ECF No. 4 at 5.) *See King*, 302 F. App'x at 96.

Nor does Plaintiff's account of the later delay in obtaining a second opinion supply the missing link. Plaintiff does not allege that Dr. Dimonte received, or had any role in responding to, Plaintiff's May and June 2024 requests, which were directed to the Health Administrator some fifteen months after Plaintiff's only alleged encounter with Dr. Dimonte. (ECF No. 6-1 at 2.) Dr. Dimonte's personal involvement in the events on which the Amended Complaint relies thus remains unalleged.[6] Moreover, Plaintiff's treating orthopedist concluded in February 2024 that nonsurgical treatment was now the best course, and that Plaintiff agreed with that plan; that a second opinion was available if Plaintiff wanted one does not convert the later administrative delay into deliberate indifference by Dr. Dimonte. (ECF No. 6-2 at 48.) Plaintiff's allegations therefore remain insufficient to state a claim against Dr. Dimonte.

[6]Plaintiff's account of his later attempts to obtain a second opinion suggests that he may have intended to assert a claim concerning that delay. Plaintiff names no defendant who was responsible for it, however, and the only individual to whom his June 3, 2024 request was directed was the Health Administrator, not Dr. Dimonte. (ECF No. 6-1 at 2.) In any event, for the reasons explained in Part III.C, a damages claim against any BOP medical or administrative official on these facts would face the same *Bivens* bar.

**E. Plaintiff's Administrative Tort Claim**

Plaintiff's motion also refers to an administrative tort claim that he submitted to the BOP, which was denied. (ECF No. 6 at 2; ECF No. 6-3.) The Court does not read the Amended Complaint to assert a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, and Plaintiff names no defendant against whom such a claim could proceed. The FTCA waives the sovereign immunity of the United States for certain torts of federal employees, and the United States is the only proper defendant in an FTCA action. *See* 28 U.S.C. §§ 2674, 2679(a), (b)(1); *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008). Plaintiff has not named the United States, and an FTCA claim cannot be maintained against Dr. Dimonte individually.

The Court further notes, without deciding any question that is not presented, that the BOP denied Plaintiff's administrative claim because the injury he alleges occurred during a work assignment. (ECF No. 6-3 at 4; *see also* ECF No. 6-2 at 2 (documenting the injury as work related).) The Inmate Accident Compensation Act, 18 U.S.C. § 4126(c), and its implementing regulations, 28 C.F.R. § 301 *et seq.*, provide the exclusive remedy against the United States for work-related injuries sustained by federal prisoners. *United States v. Demko*, 385 U.S. 149, 151-54 (1966). Courts of appeals have applied that exclusivity to claims that medical treatment of a work-related injury was improper. *See Vander v. U.S. Dep't of Justice*, 268 F.3d 661, 663 (9th Cir. 2001) (quoting 28 C.F.R. § 301.301(b)); *Wooten v. United States*, 825 F.2d 1039, 1044 (6th Cir. 1987). Nothing in this Opinion adjudicates any claim Plaintiff may have for compensation under that system, or any other claim he may have against the United States, and the Court expresses no view on the merits of any such claim beyond the observations above.

**F. Leave to Amend**

The Court has already afforded Plaintiff one opportunity to cure the deficiencies in his pleading, and his Amended Complaint adds no facts that would support a plausible inference that Dr. Dimonte was deliberately indifferent to his medical needs. More fundamentally, Plaintiff's sole claim is one for which, under *Muniz*, no *Bivens* remedy exists, and that deficiency cannot be cured by additional factual allegations. Further amendment would therefore be futile. *See Grayson*, 293 F.3d at 108; *Alston*, 363 F.3d at 235. Plaintiff's *Bivens* claim against Dr. Dimonte is dismissed with prejudice.

## IV. CONCLUSION

For the reasons expressed above, Plaintiff's Motion to Amend (ECF No. 6), which the Court construes as an Amended Complaint, is dismissed with prejudice for failure to state a claim for which relief may be granted. This dismissal does not adjudicate any claim Plaintiff may have against the United States. An order consistent with this Opinion will be entered.

Date: October 22, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**